THE BOARD OF EDUCATION, SCHOOL DISTRICT No. 151, Plaintiff-Appellant, v. THE ILLINOIS STATE BOARD OF EDUCATION et al., Defendants-Appellees.

First District (4th Division)   No. 86—0116

Opinion filed March 31, 1987.

JIGANTI, J., specially concurring.

John F. Canna and Thomas J. Canna, both of Canna & Canna, of Homewood, for appellant.

Mark S. Stein, of Potter, Schaffner & Stein, of Chicago, for appellee Bernice Weathers.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, the board of education for School District No. 151, Cook County, discharged defendant, Bernice Weathers, from her position as a tenured teacher. Following an administrative hearing, the hearing officer from defendant, the State Board of Education, reversed the discharge and ordered plaintiff to reinstate Weathers, but awarded limited back pay. Plaintiff sought administrative review in the circuit court of Cook County, while Weathers sought review of the award of limited back pay. The trial court confirmed the decision of the hearing officer as not being against the manifest weight of the evidence, but set aside the award of limited back pay and remanded the issue to the hearing officer for a separate determination.

Plaintiff now appeals, contending that (1) the hearing officer erroneously interpreted and applied plaintiff's temporary-illness regulation; (2) the hearing officer made erroneous conclusions of law; (3) the trial court erroneously applied the manifest weight of the evidence standard to questions of law; (4) if it improperly discharged Weathers, she should not receive back pay for the period before the administrative hearing; and (5) the trial court erred in failing to hold a hearing to determine the amount of lost income.

We affirm in part and reverse in part and remand.

The record shows that plaintiff adopted a regulation known as policy No. 4212 on March 16, 1981, which provides as follows:

"*Temporary Illness and Temporary Incapacity*

Absence caused by temporary illness or incapacity shall not affect contractual continued service (tenure).

Temporary illness and temporary incapacity shall be defined as illness, incapacity or any other condition which renders a certified employee physically or mentally unfit or unable to perform his or her duties and causes the employee to be absent from such duties for a period of less than 90 days after the exhaustion of accumulated sick leave.

If illness, incapacity or any other condition renders a certified employee physically or mentally unfit or unable to perform his or her duties and causes the employee to be absent from such duties for more than 90 days after the exhaustion of accumulated sick leave, such absence may be considered cause for termination of contractual continued service."

Weathers is a 60-year-old tenured teacher that plaintiff employed for 17 years. On May 2, 1983, plaintiff adopted a resolution discharging her, effective at the end of the 1982-83 school term. Weathers' "Notice of Charges and Dismissal" listed the following charges:

"1. You are in violation of Board Policy No. 4212 in that you have been absent for more than 90 days due to illness, to-wit: 132 days, after exhaustion of accumulated sick leave.

2. Your absence as aforesaid has not been pursuant to any mutual agreement between you and the Board of Education for a leave of absence.

3. Your illnesses, including but not limited to vocal chord polyps, acute diverticulitis, hypertension, and cataracts are of such nature and duration so as not to be considered temporary illnesses or incapacities as defined by Board Policy No. 4212 and the Illinois *School Code*.

4. Your absence from your teaching duties as aforesaid has

resulted in irreparable injury to the students and the School District in that:

    a. Your absence has necessitated frequent and excessive use of substitute teachers;

    b. Your absence has substantially interrupted the course of the regular educational program in the District;

    c. Your absence has created serious administrative difficulties in planning for and coordinating teaching assignments; and

    d. Your absence is not in the best interest of the schools or the students.

    5. Your conduct and action as aforesaid is irremediable.

    6. In the opinion of the Board, the interests of the schools require your dismissal from employment."

Plaintiff also provided Weathers with a bill of particulars further clarifying the general charges in her dismissal notice.

On June 18, 1984, a hearing officer from the State Board of Education held an administrative hearing on the charges pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—12). Plaintiff called Dr. Jerome T. Daly, one of its physicians. Dr. Daly examined Weathers and reviewed her medical records. He testified on the status of her health. Plaintiff also called Dr. Thomas E. VanDam, the superintendent of schools for District No. 151, who testified as to the purpose of policy No. 4212. Weathers called no witnesses, but testified on her own behalf.

Evidence adduced at the hearing shows that Weathers exhausted her sick leave and personal days for the 1981-82 and 1982-83 school terms, a total of 12 days for each term. Weathers was then absent without pay for 64½ days during the 1981-82 school term and for 66 days during the 1982-83 term. Plaintiff argues that Weathers, therefore, was absent for more than 90 days, which is cause for discharge under policy No. 4212.

The record shows that Weathers was hospitalized from October 13, 1981, to October 24, 1981, for polyps of the larynx, hypertension, leg pain, and diverticulitis. Diverticulitis is an infection that results in the development of sacs or pouches in the colon or large intestine, with symptoms resembling acute appendicitis. Surgery is the only cure. Weathers was hospitalized from March 17, 1982, to April 7, 1982, for diverticulitis and polyps. She was hospitalized from April 28, 1982, to May 15, 1982, for deep vein thrombosis and chronic obstructive pulmonary disease, which affects the lungs and limits oxygen transport. Weathers caused the pulmonary disease most probably by heavy ciga-

rette smoking; the condition would persist as long as she smoked cigarettes. The symptoms include coughing, shortness of breath, production of sputum and, eventually, right-side heart failure. It causes fatigue and difficulty in walking.

In September 1982, Weathers was hospitalized for lower back difficulties associated with the chronic obstructive pulmonary disease. She was off each day from January 28, 1983, to May 2, 1983. This absence included hospitalization from January 31, 1983, to February 3, 1983, for her cataract surgery and lens implant, and from February 6, 1983, to February 9, 1983, for anxiety neurosis, chronic obstructive pulmonary disease, anterior wall syndrome, hypertension, neuralgia, depression, and severe tension aphalgia.

Plaintiff produced evidence that Weathers' poor health would continue to cause her to be absent from work. Dr. Daly testified that Weathers' pulmonary disease is severe. Weathers was also obese, being 40% over her ideal body weight, which could aggravate her pulmonary disease. Her heavy cigarette smoking most probably caused her chronic laryngitis with polyps of the vocal cords. This condition causes hoarseness and prevents one from speaking loudly or shouting. Although Weathers was taking medication for her hypertension, the medication was not controlling it well, and uncontrolled hypertension significantly increases the likelihood of a heart attack or stroke. Further, although Weathers was cured of her deep vein thrombosis, her obesity and cigarette smoking could be catalysts for a recurrence of the illness.

Dr. VanDam testified that Weathers' absences during each school term both procedurally and functionally affected the operation of Weathers' school. Plaintiff assigned Weathers to a classroom position for the 1981-82 school term and to a librarian position for the 1982-83 term. Weathers' absences forced plaintiff to use substitute teachers. Besides increasing its costs, plaintiff's use of substitute teachers disrupts its regular program of lesson planning and teaching because the same substitute is not available for each absence. Weathers also missed training and planning meetings.

Plaintiff argued that its charges against Weathers were irremediable because her illnesses made her absences unavoidable. It, therefore, did not sent her a letter warning her to correct her conduct as section 24—12 of the School Code requires (Ill. Rev. Stat. 1985, ch. 122, par. 24—12). Plaintiff also argued that it had the authority under section 24—13 of the School Code to define what is a temporary illness (Ill. Rev. Stat. 1985, ch. 122, par. 24—13) and that its interpretation should receive great deference.

Weathers testified that she had returned to work on May 2, 1983, the same day that plaintiff adopted its resolution discharging her. She worked from May 2, 1983, to June 10, 1983, being absent without pay for one-half day. There was no evidence that Weathers was not ready, willing, and able to work on any date after the end of the 1982-83 school term.

Weathers argued that her illnesses were temporary, by definition, because she had returned to work when plaintiff discharged her. She further argued that her illnesses were remediable because they were curable; plaintiff also failed to prove that her illnesses were permanently disabling.

The hearing officer found that policy No. 4212 did not, on its face, provide a time frame for its application. Conceding that section 24—13 of the School Code empowers plaintiff to create such a policy, the hearing officer limited the issue to whether plaintiff properly applied its policy to Weathers over a period of two years instead of one year.

The hearing officer concluded that policy No. 4212 applied to teachers only one year at a time; plaintiff, therefore, erroneously applied the policy to Weathers over a period of two years. The hearing officer noted the policy's prohibition of a teacher's accumulating the absences in 90 school workdays "after the exhaustion of accumulated sick leave." He next found that plaintiff gave each of its teachers a total of 12 noncumulative leave days each school term. He reasoned that a teacher can exhaust his or her sick leave only in a single school term, since that teacher received a new set of 12 leave days each term. The hearing officer concluded, therefore, that policy No. 4212 prohibits teachers from accumulating absences for 90 school workdays in a single term.

Contrary to plaintiff's assertions, the hearing officer further concluded that Weathers' illnesses were remediable. He found that Weathers' obesity and diverticulitis were treatable and controllable; that her pulmonary disease will remain stable, if she stops smoking, but will not improve; that medicine will control her hypertension and special stockings will partially control her deep vein thrombosis; that she would improve her chronic laryngitis by quitting smoking; and that the proximity of her physical examination to the hearing date caused her anxiety. Although the hearing officer noted that these were serious illnesses and always would be with Weathers, he found that they were controllable and, therefore, did not make her mentally or physically unfit for duty. He found that plaintiff failed to show that Weathers' illnesses were irremediable.

The hearing officer ordered plaintiff to reinstate Weathers for the

1984-85 school term and to give her all back pay. Weathers' hearing, however, was originally scheduled for February 8, 1984; neither she nor her attorney appeared. The hearing officer, as a result, limited Weathers' award to back pay from the date of her dismissal to February 8, 1984. Weathers kept her seniority and other benefits.

Plaintiff sought administrative review of the hearing officer's decision in the trial court, pursuant to section 24—16 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—16). Weathers counterclaimed, seeking review of the hearing officer's award of limited back pay. The trial court confirmed the decision of the hearing officer, ruling that the decision was not against the manifest weight of the evidence. The trial court, however, set aside the the hearing officer's award of limited back pay and remanded the issue to the hearing officer for a separate determination. Plaintiff appeals.

I

The parties disagree on which of them deserves our deference: plaintiff or the hearing officer. Before August 26, 1975, a local school board removed or dismissed a tenured teacher, for a reason other than a decrease in the number of teachers employed or discontinuance of a particular teaching service, by a majority vote of its members upon specific charges and, if requested, a hearing before itself. (Ill. Rev. Stat. 1973, ch. 122, par. 24—12.) Our supreme court found that this dismissal procedure did not violate due process in the absence of proof that the procedure actually prejudiced a teacher. *Board of Education v. File* (1980), 89 Ill. App. 3d 1132, 1134, 412 N.E.2d 1030, 1032, citing *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 154-56, 365 N.E.2d 322, 327.

The appellate court, however, voiced concern that a procedure whereby a local board functioned as prosecutor, witness, judge, and jury was too susceptible to abuse. Perhaps as a result of this concern, the legislature amended section 24—12 of the School Code (1975 Ill. Laws 1844), by placing the local school board's hearing functions with an impartial hearing officer. (*Board of Education v. File* (1980), 89 Ill. App. 3d 1132, 1134-35, 412 N.E.2d 1030, 1032.) On administrative review, this court must determine whether the procedures required by law were followed and, if so, whether the decision of the finder of fact was against the manifest weight of the evidence. 89 Ill. App. 3d 1132, 1134, quoting *Waller v. Board of Education* (1973), 13 Ill. App. 3d 1056, 1058, 302 N.E.2d 190, 192.

Plaintiff, however, contends that a court must sustain the findings of a school board unless they are against the manifest weight of the

evidence. This proposition, as applied to tenured teacher dismissals, is, of course, error. The cases that plaintiff cites for this proposition either predate the 1975 amendment to section 24—12 or do not involve teacher dismissals at all. Plaintiff also cites *Stamper v. Board of Education* (1986), 141 Ill. App. 3d 884, 491 N.E.2d 36, in which the fifth division of this court stated that "[i]n an administrative review, a court will not interfere with a school board's decision regarding a teacher dismissal unless the board acted arbitrarily or capriciously or unless the reasons given for the dismissal are against the manifest weight of the evidence." (141 Ill. App. 3d 884, 887, 491 N.E.2d 36, 38.) The *Stamper* court inexplicably cited cases for this erroneous proposition that involved teacher dismissal hearings before local school boards instead of hearing officers, predating the 1975 amendment of section 24—12. 141 Ill. App. 3d 884, 887, 491 N.E.2d 36, 38.

■ Under the amended section 24—12 of the School Code, "[o]nly one decision based on the evidence submitted is provided for, and this is the decision of the appointed hearing officer." (*Board of Education v. Illinois State Board of Education* (1980), 82 Ill. App. 3d 820, 823-24, 403 N.E.2d 277, 280, quoting *Board of Education, Niles Township High School District No. 219 v. Epstein* (1979), 72 Ill. App. 3d 723, 726, 391 N.E.2d 114, 116.) We, therefore, choose not to follow *Stamper*.

## II—A

■ We also note that in the present case the hearing officer found that policy No. 4212 applies to teachers only one year at a time. Section 24—16 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—16) "empowers the [trial] court to review the entire record in an administrative proceeding, including all questions of law and of fact ***. [Although] [f]indings of fact are *** *prima facie* true and binding ***, courts may review the legal effect of those facts [citations]." *Friesel v. Board of Education* (1979), 79 Ill. App. 3d 460, 464, 398 N.E.2d 637, 641.

The hearing officer found that plaintiff gave each of its teachers a total of 12 noncumulative leave days each school term. He then noted that policy No. 4212 prohibits a teacher from accumulating absences in 90 school workdays "after the exhaustion of accumulated sick leave." The hearing officer reasoned that a teacher can exhaust his or her sick leave only in a single school term, since that teacher received a new set of 12 leave days each term. The hearing officer concluded, therefore, that policy No. 4212 applies to teachers for only one year at a time.

■ Plaintiff contends that the hearing officer's findings and conclusions were an "obviously strained construction of an otherwise clearly worded regulation." We disagree. After reviewing the record, we cannot say that the hearing officer's findings and conclusions were against the manifest weight of the evidence.

## II—B

■■ Plaintiff next contends that policy No. 4212 is a valid exercise of its authority to define temporary illness or incapacity, pursuant to section 24—13 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 24—13). In 1975, our legislature amended section 10—22.4 of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 10—22.4) to include the following provision, "[t]emporary mental or physical incapacity to perform teaching duties, as found by a medical examination, is not a cause for dismissal." 1975 Ill. Laws 2871.

Section 24—13 of the School Code provides, in pertinent part, that a teacher's tenure "is not affected by his promotion, absence caused by temporary illness or temporary incapacity as defined by regulations of the employing board." (Ill. Rev. Stat. 1985, ch. 122, par. 24—13.) Plaintiff contends that section 24—13 authorized it to define a temporary illness or incapacity as one lasting a total of less than 90 days and that section 24—13 also authorized it to apply its definition to teachers over a period of two or more years.

The various sections of the School Code are *in pari materia*; a court must, therefore, construe them with reference to one another to give harmonious meaning to the Code as a whole. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 389, 415 N.E.2d 1034, 1041.) Further, the first rule of construction as to administrative rules and regulations is that a court should construe rules made in the exercise of a power delegated by statute together with the statute itself to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason. *People v. Johnson* (1977), 68 Ill. 2d 441, 447-48, 369 N.E.2d 898, 902, quoting 2 Am. Jur. 2d *Administrative Law* sec. 307 (1962).

■ Although section 24—13 of the School Code allows a school board to define what is a temporary illness or incapacity, that board may not define it out of existence. Section 10—22.4 provides that a school board may not discharge a teacher for temporary illness or incapacity. (Ill. Rev. Stat. 1985, ch. 122, par. 10—22.4.) The hearing officer found that policy No. 4212 would violate this and other sections of the School Code if applied to Weathers over a two-year period. The trial court agreed with the hearing officer's determination. We agree also.

Plaintiff cites *Elder v. Board of Education* (1965), 60 Ill. App. 2d 56, 208 N.E.2d 423, for its argument that section 24—13 of the School Code authorized it to apply policy No. 4212 to teachers over a period of two or more years, despite section 10—22.4. We distinguish *Elder* from the instant case; *Elder* predated the 1975 amendment to section 10—22.4 that prohibits a school board from discharging a teacher for temporary incapacity.

Plaintiff also cites *Friesel v. Board of Education* (1979), 79 Ill. App. 3d 460, 398 N.E.2d 637, for its argument. The *Friesel* court stated that a school board has the right, unquestionably, to define temporary incapacity. We distinguish *Friesel* from the instant case because the court there never reached the merits of the teacher discharge. Rather, it simply held that the teacher should receive a hearing as section 24—12 requires. 79 Ill. App. 3d 460, 462-63, 398 N.E.2d 637, 639-40.

The school board in *Friesel* argued that its authority to define temporary incapacity under section 24—13 of the School Code was greater than even the teacher's right to a hearing under section 24—12. In the instant case, plaintiff does not go so far as the school board in *Friesel*. Plaintiff, however, views section 24—13 of the School Code as greater somehow than section 10—22.4. The hearing officer correctly recognized that plaintiff's power to define temporary incapacity is not absolute, but is limited by other sections of the School Code. He found that policy No. 4212 would violate the School Code if applied to teachers over a period of two or more years. We cannot say that his determination was against the manifest weight of the evidence.

### III

■ The hearing officer awarded Weathers limited back pay, from the date of her discharge to the original date of her administrative hearing, where neither she nor her attorney appeared. The trial court set aside the award of limited back pay and remanded the issue to the hearing officer for a separate determination.

We agree with all of the parties that the trial court should have adjudicated the issue of Weathers' back pay. Section 24—12 of the School Code expressly states that "[i]f a decision of the hearing officer is adjudicated upon review or appeal in favor of the teacher, then the trial court shall order reinstatement and shall determine the amount for which the board is liable." (Ill. Rev. Stat. 1985, ch. 122, par. 24—12.) Further, a trial court can properly decide the issue even though it has not been previously heard by the administrative body. (*Board of Education v. Metskas* (1982), 106 Ill. App. 3d 943, 947, 436 N.E.2d

587, 591.) We reverse, therefore, that part of the trial court's judgment concerning the issue of back pay and remand the issue to the trial court for adjudication.

For the foregoing reasons, the judgment of the circuit court of Cook County, which confirmed the decision of the hearing officer reinstating Weathers, is affirmed. However, that part of the trial court's judgment concerning the issue of back pay is reversed and the cause is remanded to the trial court for adjudication on the issue of back pay.

Affirmed in part and reversed in part and remanded.

LINN, J., concurs.

JUSTICE JIGANTI, specially concurring:

While I agree with the result in the case, I disagree with my colleagues' discussions concerning the first issue in the case. The majority opinion states that "[t]he parties disagree on which of them deserves our deference: plaintiff or the hearing officer." I see no disagreement. The plaintiff, the board of education for School District No. 151, complains that the trial court in considering its arguments stated that "none of the findings of the hearing officer can be said to be against the manifest weight of the evidence." It is the plaintiff's position that because the facts were not in dispute, what the trial court had before it was a proposition of law. A proposition of law, while certainly respected by a reviewing court, is not deferred to or binding upon a reviewing court. For that proposition, plaintiff cites the appellate decision in *General Motors Corp. v. Bowling* (1980), 87 Ill. App. 3d 204, 408 N.E.2d 937, *rev'd* (1981), 85 Ill. 2d 539, 426 N.E.2d 1210, where the court in turn cites the supreme court case of *Kensington Steel Corp. v. Industrial Com.* (1944), 385 Ill. 504, 53 N.E.2d 395. The *Kensington* decision states that where the facts are not in dispute, their legal effect becomes a matter of law and the rule as to the power of the court to set aside a decision only when made against the manifest weight of the evidence has no application. In my estimation, there is not, as the majority concludes, a dispute between the parties as to whether the school board or the hearing officer deserves deference.

Accepting that there is no dispute as to the facts and presumably no dispute as to the inferences to be drawn from these facts, it follows then that the trial court deserves no deference and the matter must be treated as a matter of law before this court. The majority opinion treats the matter as one of law.